UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JUDE DAVIS,

                              Plaintiff,

v.                                                              7:09-CV-0514
                                                                (GTS/GHL)

THE N. NEW YORK SPORTS OFFICIALS' COUNCIL;
THE N. NEW YORK SOCCER OFFICIALS' ASS'N;
THE N. NEW YORK GIRLS' BASKETBALL ASS'N;
MARK McCORMICK, President of the N. New York
Sports Officials' Council and the N. New York Girls'
Basketball Ass'n; MICHAEL RUDDY, President of the
N. New York Soccer Officials' Ass'n; WAYNE
WALBRIDGE, Vice President of the N. New York
Soccer Officials' Ass'n; ABBOT LEONARD, Rules
Interpreter of the N.  New York Soccer Officials' Ass'n;
JOHN CARDOZA, Dir. of the N. New York Soccer
Officials' Ass'n; ROLF WATERS, Dir. of the N. New
York Soccer Officials' Ass'n; DOUG SABER, Member
of the Prof'l Comm. of the N. New York Soccer Officials'
Ass'n; and RAE JOHNSTON, Member of the Prof'l
Comm. of the N. New York Soccer Officials' Ass'n,

_____
                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

O'HARA, O'CONNELL & CIOTOLI                     STEPHEN CIOTOLI, ESQ.
   Counsel for Plaintiff
7207 East Genesee Street
Fayetteville, NY 13066

SUGARMAN LAW FIRM, LLP                         JENNA W. KLUCSIK, ESQ.
   Counsel for Defendants
211 West Jefferson Street, Suite 20
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this employment discrimination action filed by Jude Davis ("Plaintiff") against the three above-captioned organizations and eight above-captioned members ("Defendants"), is Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and/or failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 13.)  For the reasons set forth below, Defendants' motion is granted, and Plaintiff's Amended Complaint is dismissed.

**I.     RELEVANT BACKGROUND**

**A.     Procedural History**

On December 17, 2007, Plaintiff commenced an Article 78 proceeding in New York State Supreme Court, St. Lawrence County, against several Defendants in this action who had suspended Plaintiff from officiating interscholastic athletic contests.  (Dkt. No. 4, at ¶ 2.)[1]  On February 11, 2008, Supreme Court Justice David Demarest denied a motion to dismiss filed by these Defendants and granted Plaintiff's cross-motion to temporarily vacate her suspension, pending further order of the court.  (Dkt. No. 1, Attach. 1 at 8.)  On April 7, 2008, Supreme Court Justice Demarest permanently vacated Defendants' suspension of Plaintiff.  (Dkt. No. 1, Attach. 2 at 8.)

Thereafter, Plaintiff filed two charges with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC").  The charges

---

[1]     Common Defendants in both actions include the following: (1) the Northern New York Sports Officials' Council; (2) the Northern New York Soccer Officials' Association; (3) Michael Ruddy, President of the Northern New York Soccer Officials' Association; (4) the Northern New York Girls Basketball Association; and (5) Mark McCormick, President of the Northern New York Sports Officials' Council and the Northern New York Girls' Basketball Association.

complained of various acts of discrimination and disparate treatment based on Plaintiff's gender. (Dkt. No. 4, at ¶ 7.)  On January 30, 2009, Plaintiff received a notice from the EEOC informing her that the EEOC was closing its file on the charges, because it was without jurisdiction to consider them as a result of the matter having been heard in State Supreme Court.  (Dkt. No. 1, Attach. 3.)

On April 30, 2009, Plaintiff filed her original Complaint in this action.  (Dkt. No. 1.)  On July 2, 2009, Plaintiff filed an Amended Complaint.[2]  (Dkt. No. 4.)  On September 30, 2009, Defendants filed the currently filed motion to dismiss.  (Dkt. No. 13.)  On October 19, 2009, Plaintiff filed a response in opposition to Defendants' motion.  (Dkt. No. 14.)  On October 26, 2009, Defendants' filed a reply to Plaintiff's response.  (Dkt. No. 16.)

### B.     Plaintiff's Amended Complaint

Liberally construed, Plaintiff's Amended Complaint asserts the following eight claims against Defendants: (1) a claim of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) a claim of retaliation under Title VII; (3) a claim of sexual discrimination under New York Executive Law § 296 *et. seq.* ("N.Y. Exec. Law § 296 "); (4) a claim of violation of the right to substantive due process under 42 U.S.C. § 1983 and the Fifth and Fourteenth

---

[2]     The Court notes that Plaintiff attached documents to her original Complaint, but failed to attach any document to her Amended Complaint.  However, because Plaintiff references the attachments in her Amended Complaint, the Court will consider these documents for purposes of deciding this Decision and Order.  (*See* Fed. R. Civ. P. 10(c) ["A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."].); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d. Cir. 1991) (noting that "[r]elying on Rule 10(c), [the court has] held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference") [citations omitted]).

Amendments; (5) a claim of violation of the right to procedural due process under 42 U.S.C. §
1983 and the Fifth and Fourteenth Amendments; (6) a claim of retaliation under 42 U.S.C. §
1983 and the First Amendment; (7) a claim of abuse of process under New York State common
law; and (8) a claim of injurious falsehood under New York State common law.  (Dkt. No. 4, at
¶¶ 52-114.)

Generally, in support of these claims, Plaintiff alleges that, despite her "good standing"
status as a member of the Northern New York Sports Officials' Council (hereinafter referred to
individually as "Council"), the Northern New York Soccer Officials' Association (hereinafter
referred to individually as "Soccer Association"), and the Northern New York Girls' Basketball
Association (hereinafter referred to individually as "Basketball Association"), Defendants
violated her civil rights in the following respects: (1) all Defendants discriminated against her by
assigning her fewer officiating games than usual on account of her gender;[3] (2) all Defendants
retaliated against her for filing a complaint with Defendants Ruddy and Walbridge in January
2006,[4] by (a) suspending her from officiating games for two weeks on September 16, 2007,[5] and

_____

[3]        More specifically, Plaintiff alleges that she "was subject to discriminatory
administrative proceedings, retaliatory disciplinary actions, embarrassment, ridicule, humiliation
and insult through the concerted actions of the defendants."  (Dkt. No. 4, at ¶ 53.)

[4]        More specifically, Plaintiff alleges that she complained to Defendants Ruddy and
Walbridge about the "improper, unprofessional and discriminatory conduct toward her by
another member of the Executive Board of the defendant [soccer association]."  (Dkt. No. 4, at ¶
61.)

[5]        The Court notes that there appears to be some uncertainty with regard to the year
in which the suspension occurred.  (*Compare* Dkt. No. 4, at ¶¶ 28, 77 [noting that the incidents
occurred in September 2007] *with* Dkt. No. 4, at ¶¶ 62, 97 [noting that the incidents occurred in
September 2006].)  However, based on the surrounding allegations in the Amended Complaint,
the Court finds that any reference to September 2006 was in err, and therefore deems any

(b) suspending her for the remainder of the 2007 season;[6] (3) all Defendants made false accusations of unprofessional conduct against her,[7] resulting in the deprivation of her liberty interest in her good name and reputation without the minimal due process required by the United States Constitution and by-laws of Defendant Council, Defendant Soccer Association and Defendant Basketball Association;[8] (4) Defendants McCormick, Ruddy, Walbridge, Leonard, Waters, Cardoza, Saber and Johnston failed to meet their obligation to provide her with due process before depriving her of her property or liberty rights pursuant to the United States

---

allegation involving the month of September to include the year 2007.

[6]     More specifically, Plaintiff alleges as follows: (1) on October 7, 2007, Defendant Ruddy informed her that the Soccer Association had "received complaints regarding her officiating during games in September 2007, and that the Professional Committee of the Soccer Association would be meeting on October 10, 2007 to consider these complaints"; (2) on October 10, 2007, she appeared before the Professional Committee and requested "the specifics of the charges" against her, but was prevented from speaking on the subject; (3) October 12, 2007, Defendant Ruddy sent her a letter informing her that the Professional Committee had recommended that she be suspended from officiating for over one year, and that the Executive Board had suspended her and placed her in the category of "Not In Good Standing"; (4) in response, she notified Defendant Ruddy that she intended to appeal the decision of the Executive Board and requested "everything in writing that the Professional Committee based their findings and decisions"; (5) soon thereafter, she was provided with two unsigned and undated copies of the complaints on which the Committee had relied on in reaching their decision to suspend her; and (6) by letter dated November 19, 2007, she was suspended by the Defendant Basketball Association, based upon the fact the she had been suspended and placed in the "Not In Good Standing" category by the Soccer Association and Ruddy.  (Dkt. No. 4, at ¶¶ 28-38, 62-64.)

[7]     Plaintiff alleges the false accusations of unprofessional conduct stem from alleged incidents that occurred on September 13, 2007, and September 25, 2007.  (Dkt. No. 4, at ¶ 77.)

[8]     Plaintiff alleges that she "was given no information about the false allegations of unprofessional conduct made by the defendants against her, was given no name-clearing hearing or opportunity to dispute or respond to these false allegations, and was denied any opportunity to appeal the disciplinary actions taken against her based on such false allegations."  (Dkt. No. 4, at ¶ 80.)

Constitution and by-laws of Defendant organizations;[9] (5) Defendants Ruddy and McCormick retaliated against her for questioning the integrity, veracity and truthfulness of members of the Executive Board of Defendants Council, Basketball Association and Soccer Association, by suspending her from officiating games;[10] (6) Defendants initiated a public and deeply flawed administrative process against her, requiring her to initiate an Article 78 proceeding in New York State Superior Court;[11] and (7) Defendants concocted false statements about her and issued those statements to members of the above-captioned Defendant-entities, in addition to the public at large.  (*Id.*).

Familiarity with the remaining factual allegations supporting the eight claims asserted in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*See generally* Dkt. No. 4.)

---

[9]     Plaintiff alleges that she "has a liberty interest in her right and ability to obtain employment in her profession and in her good name and reputation in her profession and in the community."  In addition, Plaintiff alleges that "[D]efendants deprived her of both of those interests, without any due process, through the flawed hearing process and by engaging in a deliberate campaign of retaliation through a series of acts and public statements meant to punish and humiliate [her] and remove her from her position as official and member in good standing." (Dkt. No. 4, at ¶¶ 86, 88.)

[10]     Plaintiff alleges that "[t]he obvious purpose for the defendants' hostile and retaliatory acts was to deter her from continuing to raise legitimate concerns about the members of the Executive Board.  In retaliating against [her] for exercising her free speech rights, [D]efendants, individually and collectively, exercised power purportedly possessed by virtue of state law and made possible only because the wrongdoers were clothed with such power and authority."  (Dkt. No. 4, at ¶ 100.)

[11]     Plaintiff alleges that, in requiring her to initiate Article 78 proceedings, "[D]efendants sought collateral advantage and/or detriment to [her] outside any potentially legitimate ends of the process.  This was done out of improper motives based on gender and in a desire to exact retaliation against [her] for being a diligent official and questioning the improper acts of public officials."  (Dkt. No. 4, at ¶ 107.)

C.     **Defendants' Motion to Dismiss**

Generally, in support of their motion to dismiss for lack of subject matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1), Defendants argue that Plaintiff's claims of sexual

discrimination under N.Y. Exec. Law § 296 must be dismissed because (1) Plaintiff already filed

a complaint with the New York State Division of Human Rights ("NYSDHR") based on the

same allegations that form the basis of this cause of action, and (2) the NYSDHR dismissed

Plaintiff's complaint for lack of subject matter jurisdiction as a result of the matter having been

adjudicated in an Article 78 proceeding.

Generally, in support of their motion to dismiss for failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6), Defendants assert the following seven arguments: (1) Plaintiff's claims

under Title VII and N.Y. Exec. Law § 296 must be dismissed because Plaintiff has failed to

allege facts plausibly suggesting that any Defendant was an employer for purposes of Title VII

and/or N.Y. Exec. Law § 296, or that she was an employee of any Defendant; (2) Plaintiff's

claims under Title VII must be dismissed because the alleged acts that give rise to her Title VII

claims occurred more than 300 days before Plaintiff filed her complaint with the EEOC; (3)

Plaintiff's Title VII and N.Y. Exec. Law § 296 claims against the individual Defendants must be

dismissed because those claims cannot be brought against individuals; (4) Plaintiff's due process

claims must be dismissed because Plaintiff has failed to allege facts plausibly suggesting that she

had a protected liberty interest that state action deprived her of; (5) Plaintiff's First Amendment

claims must be dismissed because Plaintiff (a) failed to allege any facts plausibly suggesting that

she is a public employee, and (b) failed to plead any of the elements necessary for an individual

to bring a retaliation claim as a private citizens; (6) Plaintiff's claim for abuse of process must be

dismissed because Plaintiff (a) failed to allege any facts plausibly suggesting that Defendants

used a judicial or legal process to either compel or forbear her from performing some act, (b)

failed to allege any special damages, and (c) is barred by the statute of limitations from asserting

this claim; and (7) Plaintiff's claim for injurious falsehood must be dismissed because Plaintiff

(a) failed to allege the "particular words" that caused her injury, (b) failed to allege special

damages, and (c) is barred by the statute of limitations from asserting this claim.  (*See generally*

Dkt. No. 13, Attach. 9 [Defs.' Memo. of Law].)

> **D.      Plaintiff's Response**

In Plaintiff's response to Defendants' motion to dismiss, she argues as follows: (1) her

N.Y. Exec. Law § 296 should not be dismissed because the NYSDHR erroneously dismissed her

complaint and she has never had an opportunity to litigate her claims of discrimination,

retaliation and intentional torts; (2) her N.Y. Exec. Law § 296 and Title VII claims should not be

dismissed because she has sufficiently alleged that Defendants were employers through her

allegation that Defendants controlled every aspect of her employment, including the ability to

discipline, suspend and terminate her; (3) her Title VII claims are not barred by the statute of

limitations because some of the incidents occurred within the 300-day limitations period and the

continuing violations doctrine applies to all the incidents that occurred outside the limitations

period; (4) her Title VII and N.Y. Exec. Law § 296 claims against the individual Defendants

should not be dismissed because (a) under Title VII, certain supervisory individuals who have

decision making power can be held liable as agents of the employer, and (b) under N.Y. Exec.

Law § 296, a claim may be maintained against an employee in his or her individual capacity if

the employee either had an ownership interest or any power to do more then carry out personnel

decisions made by others, which she has alleged; (5) her due process claims should not be

dismissed because the allegations in the Amended Complaint satisfy the "stigma-plus" doctrine;

(6) her First Amendment claim should not be dismissed because she has alleged each element of the public official test, and, alternatively, as a private citizen, she has alleged that her speech was "chilled"; and (7) her injurious falsehood claim should not be dismissed because (a) the conduct complained about "at least partially took place within one year preceding the date she commenced [this action]," (b) she does not have to plead the exact language used, and (c) special damages were alleged because she alleged that she was unable to make a living and had to move out of the area to resume her officiating career.  (*See generally* Dkt. No. 14 [Plf.'s Response Memo. of Law].)[12]

---

[12]     The Court notes that many of the factual allegations that Plaintiff presents in her response were not asserted in her Amended Complaint.  For example, in her response, Plaintiff alleges as follows: "the Defendant organizations collectively qualify as employers within the meaning of 42 U.S.C. Section 2000e(b)"; (2) "Defendant organizations are made up of members and its membership far exceeds the minimum fifteen employee requirements as specified in that statute"; (3) "[t]he organizations provide officials to every level of interscholastic sporting contests within the Section X geographic region, which is made up of twenty-eight school districts"; (4) "there are nine member/employees named in this action. . . , which represents only a fraction of the total number of members in Defendant organizations"; and (5) "[b]ased on the degree to which the organizations control its members . . . it is beyond dispute that the organizations qualify as employers under 42 U.S.C. Section 2000e(b)."  (Dkt. No. 14.)  The Court rejects these factual allegations for two reasons.  First, because Plaintiff has already filed an Amended Complaint, she must, but has failed to, file a motion to amend her complaint, accompanied by her proposed Second Amended Complaint, an affidavit, and a specific identification of the proposed amendments.  *See* Fed. R. Civ. P. 15(a)(2); N.D.N.Y. L.R. 7.1(a)(4).  Second, because the Court declines to convert Defendants' motion to dismiss to a motion for summary judgment, the Court will not consider these additional facts in deciding Defendants' motion to dismiss.  *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d. Cir. 1988) (holding that "[Fed. R. Civ. P.] 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material"); *Terranova v. New York*, 144 F. App'x. 143, 145 (2d. Cir. 2005) (holding that, "when materials outside the pleadings are offered upon a motion to dismiss . . .  a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material") (internal citations omitted).

However, Plaintiff concedes that her abuse-of-process claim is insufficient and therefore voluntarily withdraws it.  (Dkt. No. 14, at 25-27.)  In so doing, Plaintiff argues that she instead asserted a claim for a *prima facie* tort.  (*Id.*)  Plaintiff therefore seeks leave to amend and substitute her claim of a *prima facie* tort.[13]

### E.    Defendants' Reply

In their reply, Defendants argues as follows: (1) to the extent that Plaintiff's opposition papers contain multiple factual allegations not contained or reasonably inferred from her Amended Complaint, the Court must disregard those allegations and decide Defendants' motion on the Amended Complaint alone; (2) Plaintiff's N.Y. Exec. Law § 296 claims should be dismissed for lack of subject matter jurisdiction because (a) the case cited by Plaintiff as supporting her argument that the election of remedies is improperly presented under Fed. R. Civ. P. 12(b)(1) is inconsistent with other Second Circuit decisions, (b) even if the NYSDHR had improperly dismissed Plaintiff's complaint, her remedy would be to appeal that ruling, which she failed to do, and (c) when the NYSDHR dismissed her complaint for lack of jurisdiction because the matter was adjudicated in the Article 78 proceeding, it had to have implicitly found that the Article 78 proceeding and the NYSDHR proceeding were based on the same alleged conduct; (3) Plaintiff's claims under N.Y. Exec. Law  § 296 should be dismissed because (a) these claims are barred by the statute of limitations because Plaintiff's Amended Complaint does not allege facts plausibly suggesting a continuing violation in order to invoke the continuing violation doctrine, and (b) Plaintiff has failed to allege that any individual Defendant has ownership interest or

---

[13]    The Court notes that, because this request was not properly brought (i.e., in the form of a motion to amend), the Court declines to consider this request in this Decision and Order.

power to carry out personnel decisions made by others; (4) Plaintiff's Title VII claims should be dismissed because (a) these claims are barred by the statute of limitations (in that Plaintiff's Amended Complaint does not allege facts plausibly suggesting a continuing violation in order to invoke the continuing violation doctrine), (b) courts in this circuit have rejected the individual/official capacity distinction in Title VII cases and have declined to hold individuals liable in their official capacities, and (c) even if the individual Defendants could be held liable under Title VII, Plaintiff has failed to allege any facts other than Defendants alleged titles; (5) Plaintiff's due process claims should be dismissed because (a) Plaintiff has failed to address various of Defendants' arguments,[14] and (b) a suspension is not sufficient to satisfy the "plus" requirement; (6) Plaintiff's First Amendment retaliation claim should be dismissed because (a) Plaintiff failed to allege that she is an "employee" of any of Defendant, or a "public employee," and (b) Plaintiff failed to allege that Defendants' alleged actions chilled her speech or otherwise prevented her from speaking; (7) Plaintiff's injurious falsehood should be dismissed because (a) it is barred by the statute of limitations, (b) Plaintiff failed to allege the specific statements that were made, and (c) Plaintiff did not make allegations of specific damages in her Amended Complaint; and (8) Plaintiff's request for leave to amend should be denied because (a) it was presented in only her opposition papers and is therefore not properly before the Court, and (b) it would be futile to grant Plaintiff's request in that Plaintiff failed to plead special damages in her Amended Complaint.  (*See generally* Dkt. No. 16 [Defs.' Reply Memo. of Law].)

---

[14]     Specifically, these arguments are that (i) a statement that an employee merely performed a job poorly or acted in an improper manner is not enough to establish stigma, and (ii) Plaintiff's allegation that Defendants' actions negatively impacted her current and future employability is conclusory and not sufficiently serious to implicate the due process clause.

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing Motions to Dismiss for Failure to State a Claim

For the sake of brevity, the Court will not recite, in this Decision and Order, the

well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R.

Civ. P. 12(b)(6), but will direct the reader to the Court's recent decision in *Wade v. Tiffin*

*Motorhomes, Inc.*, 686 F. Supp. 2d 174, 181-84 (N.D.N.Y. 2009) (Suddaby, J.).

### B.    Legal Standard Governing Motions to Dismiss for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under [Fed. R. Civ.

P.] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]).  "In

resolving a motion to dismiss for lack of subject matter jurisdiction under [Fed. R. Civ. P.]

12(b)(1), a district court . . . may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d

at 113 (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists."  *Id.* (citation omitted).

### C.   Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an

accurate understanding of the legal standards governing Plaintiff's claims in this action, the

Court will not recite, in their entirety, those legal standards in this Decision and Order, which

(again) is intended primarily for review by the parties.  (Dkt. No. 13, Attach. 9 [Defs.' Memo. of

Law]; Dkt. No. 14 [Plf.'s Response Memo. of Law]; Dkt. No. 16 [Defs.' Reply Memo. of Law].)

III.        ANALYSIS

A.        **Plaintiff's Claims Under Title VII and N.Y. Exec. Law § 296**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

Plaintiff's claims of discrimination and retaliation under Title VII and sexual discrimination

under N.Y. Exec. Law § 296 because, among other things, Plaintiff failed to allege that (1) any

Defendant was an employer for purposes of Title VII and/or N.Y. Exec. Law § 296, and (2) she

was an employee for purposes of Title VII and/or N.Y. Exec. Law § 296.  Based on a liberal

construction of Plaintiff's Amended Complaint, the Court accepts these arguments.

1.        **Claims Under Title VII**

a.        **Whether Defendants Were "Employers" as that Term Is
              Defined in Title VII**

Title VII prohibits discrimination of an employee based on race, color, religion, sex, or

national origin by an "employer."  42 U.S.C. § 2000e-2.  An "employer" is defined as "a person

engaged in an industry affecting commerce who has fifteen or more employees for each working

day in each of twenty or more calendar weeks in the current or preceding calendar year, and any

agent of such a person."  42 U.S.C. § 2000e(b).  An argument that a defendant is not a Title VII

employer is jurisdictional.  *See E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248-49 (1991);

*Serrano v. 900 5th Ave. Corp.*, 4 F. Supp.2d 315, 316 (S.D.N.Y. 1998); *see also Guadagno v.*

*Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 96 (S.D.N.Y. 1996) (holding that "employer"

definition must be satisfied for the court to have jurisdiction).  "[T]he burden of proving

jurisdiction is on the party asserting it."  *Keller v. Niskayuna Consol. Fire Dist. 1*, 51 F. Supp.2d

223, 226-27 (N.D.N.Y. 1999) (Kahn, J.) (noting that "because it is undisputed that defendants

have only eleven individuals on the payroll, plaintiff must either demonstrate that all four

13

individuals alleged to be independent contractors are in fact employees or else show that the volunteer workers are employees in order to meet the fifteen employee requirement") (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 [2d Cir. 1994]).

As an initial matter, Plaintiff has failed to allege facts plausibly suggesting (let alone introduce evidence establishing) that Defendant Council, Defendant Soccer Association, or Defendant Basketball Association employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  As a result, Plaintiff has failed to establish that any Defendant was an employer for purposes of Title VII.

**b.      Whether Plaintiff Was an "Employee" as that Term Is Defined in Title VII**

An "employee" is defined as "an individual employed by an employer."  42 U.S.C. § 2000e(f).  To establish that Plaintiff was an "employee" within the definition of Title VII, she must first show she was "hired by the putative employer."  *U.S. v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004).  Once this is shown, "the question of whether someone is or is not an employee under Title VII usually turns on whether he or she has received direct or indirect remuneration from the alleged employer."  *York v. Ass'n of the Bar*, 286 F.3d 122, 125-26 (2d Cir. 2002) (quoting *Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 [2d Cir. 1999]).  The remuneration may be in the form of a salary or consist of "substantial benefits not merely incidental to the activity performed."  *Id*. at 126.

In this action, Plaintiff has not alleged facts plausibly suggesting that any of the Defendants hired her, employed her, or that an employment relationship existed between any

Defendant in this action and Plaintiff.[15]  Rather, Plaintiff alleges only that "[h]er chosen career and occupation is officiating interscholastic, collegiate and other athletic contests."  (Dkt. No. 4, at ¶ 1.)

However, courts in this circuit look "beyond mere labels in assessing whether defendant is an employer, and apply the common law of agency to determine whether an individual is an independent contractor or an employee for purposes of Title VII with reference to the thirteen factors articulated by the Supreme Court in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)." *Deshpande v. Medisys Health Network, Inc.*, 07-CV-0375, 2010 WL 1539745, at *10 (E.D.N.Y. April 16, 2010).  The *Reid* factors are as follows: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party.  *Reid*, 490 U.S. at 751-52.

In applying the *Reid* factors, "a court must disregard those factors that, in light of the facts of a particular case, are (1) irrelevant[,] or (2) of 'indeterminate' weight." *Eisenberg v.*

---

[15]     *Krasner v. Episcopal Diocese of Long Island*., 328 F. Supp. 2d 367, 371 (E.D.N.Y. 2004) (holding that a complaint must be dismissed where plaintiff fails to allege that defendant is her employer or that an employment relationship existed); *Aquino v. Prudent Life and Cas. Ins. Co.*, 419 F. Supp. 2d 259, 276 (E.D.N.Y. 2005) (holding that to establish a prima facie case under Title VII, plaintiff must plead, at a minimum, that the actions of the defendants were related to an employment relationship between defendants and plaintiff).

*Advance Relocation & Storage, Inc*., 237 F.3d 111, 114 (2d Cir. 2000).  Although no single *Reid*

factor is dispositive, the Second Circuit has found that in the context of anti-discrimination cases,

the "'greatest emphasis' should be placed on the first factor-that is, on the extent to which the

hiring party controls the 'manner and means' by which the worker completes his or her assigned

tasks." *Eisenberg*, 237 F.3d at 114 (quoting *Frankel v. Bally, Inc*., 987 F.2d 86, 90 [2d Cir.

1993]); *Salamon v. Our Lady of Victory Hosp*., 514 F.3d 217, 227-28 (2d Cir. 2008) ("What is at

issue is not merely the right to dictate the outcome of the work, but the right to control the

'manner and means' by which the hiree accomplishes that outcome.").  "The issue of whether a

hired worker is an independent contractor or an employee is 'typically a question for the

factfinder, unless the evidence in the record relevant to this question is undisputed, in which case

a court may resolve the issue as a matter of law.'"  *Nazinitsky v. Fairmont Ins. Brokers, Ltd.*,

06-CV-5555, 2010 WL 836766, at *8 (E.D.N.Y. Mar. 8, 2010) (quoting *Murphy v. Guilford

Mills, Inc*., 02-CV-10105, 2005 WL 957333, at *5 [S.D.N.Y. Apr. 22, 2005]).

        Here, with regard to the first factor, based on the allegations in the Amended Complaint,

Defendants' right to control the manner and means by which the product is accomplished (in this

case an individual officiating a game) is limited by complaints levied by third- parties regarding

the quality of the individual's prior officiating.  In addition, with regard to the sixth factor,

because an individuals assignment to officiate future games depends, in part, on complaints

levied by third-parties, the assignment of additional projects is not entirely within Defendants'

discretion.  Moreover, based on a liberal construction of Plaintiff's Amended Complaint, with

regard to the seventh factor, when and how long Plaintiff may work depends not entirely on

Defendants but instead in large part on complaints levied by third-parties regarding the quality of

16

the individual's officiating.[16]   Furthermore, with regard to the eighth, twelfth, and thirteenth

factors, all of which the Court finds are relevant and of determinate weight, Plaintiff has failed to

allege any facts relevant to those factors.  As a result, the Court finds that Plaintiff was an

independent contractor of Defendants and not an employee of Defendants.  As a result, Plaintiff

is not entitled to protection under Title VII.  *See Salamon v. Our Lady of Victory Hosp.*, 514

F.3d 217, 226 (2d. Cir. 2008) (holding that, "[o]nce a plaintiff is found to be an independent

contractor and not an employee . . . [,] the Title VII claim must fail).

     For each of these alternative reasons, the Court dismisses Plaintiff's Title VII  claims for

failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### 2.     Claims Under N.Y. Exec. Law § 296

     New York Human Rights Law ("NYHRL") provides, in pertinent part, that "it shall be

unlawful discriminatory practice . . . for an employer . . . because of the age, race, creed, color,

national origin, sex . . . to discriminate against such individuals in compensation or in terms,

conditions or privileges of employment."  N.Y. Exec. Law § 296.  "In deciding a motion to

dismiss, the Court considers the claims under the New York Human Rights Laws in tandem with

Title VII claims."  *Krasner v. Episcopal Diocese of Long Island*, 328 F. Supp.2d 367, 371

(E.D.N.Y. 2004) (collecting cases).  "Because . . . [P]laintiff has not alleged that [any Defendant

is] her employer under Title VII, her claims against the [Defendants] under NYSHRL must also

be dismissed for similar reasons."  *Krasner*, 328 F. Supp.2d at 371.  As a result, the Court

---

[16]     The Court notes that Plaintiff attached to her original Complaint the Decision and
Order from her Article 78 proceeding, which expressly states, among other things, as follows:
[t]he Section X Agreement and the constitution and by-laws have been reviewed . . . . Neither
document includes any language guaranteeing an official of high school sporting events a certain
number of games or events in any given sports season, or any given academic year."  (Dkt. No.
1, Attach. 2 at 7-8.)

dismisses Plaintiff's New York Human Rights Law claims for failure to state a claim upon which

relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### B.     Plaintiff's Claims Under the Due Process Clause

#### 1.     Claims of Denial of Procedural Due Process

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

Plaintiff's due process claims because she failed to allege facts plausibly suggesting that she had

a protected liberty interest of which Defendants deprived her.  Based on a liberal construction of

Plaintiff's Amended Complaint, the Court accepts Defendants' argument.

The Supreme Court has stated that procedural due process claims are to be examined "in

two steps: the first asks whether there exists a liberty or property interest which has been

interfered with by the State; the second examines whether the procedures attendant upon that

deprivation were constitutionally sufficient."  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S.

454, 460 (1989) (citations omitted).

With regard to the first step (i.e., whether there exists a liberty or property interest which

has been interfered with by the State), the Supreme Court has held that damage to a person's

reputation is not "by itself sufficient to invoke the procedural protection of the Due Process

Clause."  *Paul v. Davis*, 424 U.S. 693, 711-12 (1976).  Rather, the Supreme Court has held, loss

of reputation must be coupled with some other tangible element in order to rise to the level of a

protectible liberty interest.  *Paul*, 424 U.S. at 711-12.  The Second Circuit has interpreted this

holding to mean that "stigma plus" is required to establish such a constitutional deprivation.  *See*

*Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994); *Neu v. Corcoran*, 869 F.2d 662, 667 (2d

Cir.), *cert. denied*, 493 U.S. 816 (1989).

As the Second Circuit has noted, "it is not entirely clear what the 'plus' is."  *Valmonte*,

18

18 F.3d at 1000 (citing *Neu*, 869 F.2d at 667).  The Second Circuit has held that such a "plus"

includes (1) one's deprivation of a property interest,[17] (2) one's termination from governmental

employment,[18] (3) one's termination from quasi-governmental employment,[19] and (4) one's

inability to obtain a job with a child-care provider in New York State, who must (by operation of

law) consult the New York State Central Register of Child Abuse and Maltreatment and, if an

applicant's name is on that list, explain in writing the reasons that the provider is hiring the

applicant.[20]  As for what other tangible element constitutes such a "plus," the Second Circuit has

explained that the tangible element must consist of "a deprivation of some . . . legal right or

status."  *Valmonte,* 18 F.3d at 1000 (citing *Neu*, 869 F.2d at 667).[21]  While the precise scope of

the term "some legal rights or status" remains somewhat unclear, it is clear that the term does not

---

[17]      *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004); *Greenwood v. New York, Office of Mental Health*, 163 F.3d 119, 124 (2d Cir. 1998) (citations omitted).

[18]      *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004); *Valmonte*, 18 F.3d at 1000 (citing *Neu*, 869 F.2d at 667).

[19]      *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 442-46 (2d Cir. 1980) (ruling that "plus" included termination from quasi-governmental employment); *cf. Abramson v. Pataki*, 278 F.3d 93, 103 (2d Cir. 2002) (rejecting argument that "plus" included failure to *obtain* quasi-governmental employment); *Walentias v. Lipper*, 862 F.2d 414, 420-21 (2d Cir. 1988) (ruling that it was not clearly established in 1984 that "plus" included failure to *obtain* governmental employment).

[20]      *Valmonte*, 18 F.3d at 1001 (citing *Neu*, 869 F.2d at 667).

[21]      *See also Sadallah*, 383 F.3d at 38 ("To prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights. . . .  The state-imposed burden or alteration of status must be "in addition to the stigmatizing statement.") (internal quotation marks and citations omitted), *Woe v. Spitzer*, 571 F. Supp.2d 382, 387 (E.D.N.Y. 2008) ("[T]o show a liberty interest, Plaintiff must show more than the stigma attached to his inclusion on the sex offender registry.  Specifically, he must show what has been referred to as 'stigma plus,' *i.e.*, stigma accompanied by the potential loss of rights under law.") (citation omitted).

include the "deleterious effects" that normally flow from a sullied reputation, such as "the impact that defamation might have on [other] job prospects, . . . romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." *Id*. at 1001.[22]

Here, Plaintiff has alleged, in conclusory fashion, that Defendants were "state actors acting under the color of state law" when they denied her the process she was due. (Dkt. No. 4.) Because Plaintiff has not alleged facts plausibly suggesting that any organizational Defendant is a state entity, her conclusory allegation that certain individual Defendants were state actors is not sufficient. *See, e.g., Ivey v. Kawasaki Rail Car, Inc*., 05-CV-2207, 2005 WL 3133765, at *3-4 (E.D.N.Y. Nov. 23, 2005) (dismissing plaintiff's § 1983 claim because plaintiff failed to allege facts plausibly suggesting that defendants were state actors, noting that "a conclusory allegation that defendant, a private entity, was acting under color of state law, without supporting facts, does not suffice to state a claim under § 1983").

In any event, even if the Court were to accept as sufficient Plaintiff's conclusory allegation that the individual Defendants are state actors, Plaintiff's procedural due process claim would nonetheless fail because she has not alleged facts plausibly suggesting what "legal right or status" she was deprived of (other than the right to not suffer defamation and the deleterious effects normally flowing from it) necessary to confer on her a liberty interest protected by the Fourteenth Amendment Procedural Due Process Clause. (Dkt. No. 4, ¶¶ 82-89.) For example, Plaintiff alleges no facts plausibly suggesting that she was terminated from, or failed to obtain, employment as a result of Defendants' actions. (*See generally* Dkt. No. 4.) Rather, Plaintiff

---

[22]        *See also Sadallah*, 383 F.3d at 38 ("[D]eleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine.") (internal quotation marks and citation omitted).

alleges–vaguely and conclusorily–only that Defendants' false accusations of unprofessional conduct interfered with her right and ability to obtain employment in her profession and in her good name and reputation in her profession and in the community.  (*Id.* at ¶¶ 86-87.)  However, Plaintiff alleges no *facts* plausibly suggesting how the interference did this, for example, by causing her to not be hired as an official by other organizations.  (*See generally* Dkt. No. 4.) Indeed, the facts alleged by Plaintiff plausibly suggest that the "interference" consisted only of "psychological damages, embarrassment, humiliation, emotional distress[,] . . . mental anguish and suffering, [and] damage to her reputation."  (*Id.* at ¶ 89.)  This is not sufficient.  *Valmonte*, 18 F.3d at 1001.

     In any event, even if Plaintiff had alleged what "legal right or status" she was deprived of, the Court would find that Plaintiff has failed to allege facts plausibly suggesting that she enjoyed a protected liberty interest under the circumstances.  This is because, generally, to do so, a plaintiff must allege facts plausibly suggesting the following: (1) a stigmatizing statement (i.e., a statement that is sufficiently derogatory to injure the plaintiff's reputation, that is capable of being proved false, and that he or she claims is false); (2) the public dissemination of the stigmatizing statement; and (3) a resulting tangible and material state-imposed deprivation or alteration of some legal right or status possessed by plaintiff (other than the right to not suffer defamation and the deleterious effects normally flowing from it).  *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) [citations omitted; emphasis added].  Here, Plaintiff does not allege facts plausibly suggesting that any stigmatizing statement resulted in a tangible and material state-imposed deprivation or alteration of some legal right or status.  Rather, Plaintiff alleges merely that the statements made by Defendants "caused harm to [P]laintiff's reputation and negatively impacted her current and future employability."  (Dkt. No. 4, at ¶ 78.)  This sort of conclusory

allegation is not sufficient to render Plaintiffs' procedural due process claim plausible.

For each of these alternative reasons, the Court dismisses Plaintiff's procedural due process claim for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### 2.      Claims of Denial of Substantive Due Process

"To state a due process violation–procedural or substantive–Plaintiff must first show a deprivation of a constitutionally protected property or liberty interest." *Berrios v. State Univ. of N.Y. at Stony Brook*, 518 F. Supp.2d 409, 418 (E.D.N.Y. 2007) (citing, *inter alia*, *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 [2d Cir.], *cert. denied*, 510 U.S. 865 [1993]). "It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process." *Berrios*, 518 F. Supp.2d at 418. "While state law may define the interest sought to be protected, federal law determines whether an interest rises to the level of an 'entitlement' implicating the protections of the Due Process Clause." *Id*. at 418-19 (citations omitted).

"The recognition of a property right to the continuation of one's public employment, or to particular working conditions, must be based upon more than an 'abstract need or desire,' instead, there must be a 'legitimate claim of entitlement. . . .'" *Id*. (quoting *Morris v. Lindau*, 196 F.3d 102, 115 [2d Cir. 1999]). "Thus, a plaintiff must establish that the continuation of employment or a desired benefit was 'virtually a matter of right.'" *Id*. (quoting *Kane v. Krebser*, 44 F. Supp.2d 542, 550 [S.D.N.Y. 1999]); *Emmerling v. Town of Richmond*, 09-CV-6418, 2010 WL 2998911, at *11 (W.D.N.Y. July 27, 2010) (noting that "[t]he right to continued public employment is not a fundamental property interest that is subject to Substantive Due Process

protection") (collecting cases); *see also Sutton v. Village of Valley Stream*, 96 F. Supp.2d 189, 193 (E.D.N.Y. 2000) (finding changes in job responsibilities and salary reduction do not constitute gross abuse of governmental authority).

Based on a liberal construction of Plaintiff's Amended Complaint, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that she was employed in such a manner that guaranteed her either continued employment or tenure.[23]  Instead, Plaintiff alleges simply that she was "deprived [P]laintiff of her liberty interest in her good name and reputation without the minimal due process required by the constitution and by-laws of the [D]efendants Council and Soccer Association."  (Dkt. No. 4, at ¶ 76.)  This is not enough.

Furthermore, "[t]o state a claim for violation of substantive due process, Plaintiff must demonstrate that Defendants 'exercise[d] . . . power without any reasonable justification in the service of a legitimate governmental objective.'"  *Laham v. Safir*, 98-CV-3115, 2001 WL 1448441, at *4 (S.D.N.Y. Nov. 15, 2001) (quoting *SeaAir NY, Inc. v. City of New York*, 250 F.3d 183, 187 [2d Cir. 2001]).  The defendants' actions must be "arbitrary, conscience-shocking, or oppressive in a constitutional sense."  *SeaAir NY, Inc.*, 250 F.3d at 187 (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 [2d Cir. 1995]); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) (noting the "protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity").

---

[23]     Again, the Court notes that the Decision and Order from her Article 78 proceeding expressly states, among other things, as follows: "[t]he Section X Agreement and the constitution and by-laws have been reviewed . . . .  Neither document includes any language guaranteeing an official of high school sporting events a certain number of games or events in any given sports season, or any given academic year."  (Dkt. No. 1, Attach. 2 at 7-8.)

Based on a liberal construction of Plaintiff's Amended Complaint, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that Defendants' conducting of meetings regarding Plaintiff's officiating, in response to complaints received, and ultimately suspending her for the remainder of the season, constituted "an exercise . . . [of] power without any reasonable justification" such that Defendants' actions were "arbitrary, conscience-shocking, or oppressive."

For each of these alternative reasons, Plaintiff's substantive due process claim is dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).[24]

### C.   Plaintiff's First Amendment Claims

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's First Amendment retaliation claim because Plaintiff has failed to allege facts plausibly

---

[24]     The Court notes that, in the Fifth Cause of Action of Plaintiff's Amended Complaint, she alleges that certain Defendants "had an obligation to provide [her] with due process before depriving her of property or liberty rights pursuant to the constitution and by-laws of [D]efendants Council and Soccer Association, [under] 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the United States Constitution[, *and that] [t]heir actions also violate Title VII and the Equal Protection Clause*."  (Dkt. No. 4, ¶ 84 [emphasis added].)  As an initial matter, Plaintiff's Amended Complaint fails to allege facts plausibly suggesting an equal protection claim, and the Court declines to liberally construe the Amended Complaint as asserting such a claim based solely on a conclusory allegation.  In any event, even assuming that Plaintiff's Amended Complaint could be liberally construed as asserting an equal protection claim on a class-of-one theory, such a claim would nonetheless fail.  This is because the Court has already found, based on a liberal construction of Plaintiff's Amended Complaint, that she has failed to allege facts plausibly suggesting that Defendants' conducting of meetings regarding Plaintiff's officiating, in response to complaints received, and ultimately suspending her for the remainder of the season, constituted "an exercise . . . [of] power without any reasonable justification."  *See Kriss v. Schenectady City Sch. Dist.*, 08-CV-0230, 2010 WL 3338949, at *17 (N.D.N.Y. Aug. 24, 2010) (Suddaby, J.) (noting that a plaintiff alleging a "class of one" equal protection claim must allege, among other things, that "there is no rational basis for the difference in treatment [that she experienced]") (internal quotation marks and citations omitted).

suggesting that she is a public employee, and, even assuming she had so alleged, she has failed

to allege facts plausibly suggesting the existence of any element required for private citizens to

be entitled to relief from retaliation.  Based on a liberal construction of Plaintiff's Amended

Complaint, the Court accepts Defendants' argument.

"To state a First Amendment retaliation claim as a public employee, a plaintiff must

allege that (1) h[er] speech addressed a matter of public concern; (2) [s]he suffered an adverse

employment action; and (3) a causal connection existed between the speech and the adverse

employment action 'so that it can be said that h[er] speech was a motivating factor in the

determination.'" *Anemone v. Metro. Transp. Auth.*, 410 F. Supp.2d 255, 264-65 (S.D.N.Y.

2006) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 382 [2d Cir. 2003] [quoting *Morris*

*v. Lindau*, 196 F.3d 102, 110 [2d Cir. 1999]).

With regard to the first element, whether or not "'an employee's speech addresses a

matter of public concern is a question of law for the court to decide, taking into account the

content, form, and context of a given statement as revealed by the whole record.'" *Ruotolo v.*

*City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163

[2d Cir. 1999]).  "If [a court] determine[s] that [Plaintiff] either did not speak as a citizen or did

not speak on a matter of public concern, [s]he has no First Amendment cause of action based on

h[er] employer's reaction to the speech." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 201 (2d Cir.

2010) (internal quotations and citations omitted).

"As a general rule, speech on 'any matter of political, social, or other concern to the

community' is protected by the First Amendment." *Morris*, 196 F.3d at 110 (quoting *Connick v.*

*Myers*, 461 U.S. 138, 146 [1983]).  "Speech relating to public corruption and/or a public entity's

failure to adequately or properly investigate such corruption lies comfortably within these

categories of protected expression."  *Anemone*, 410 F. Supp.2d at 265 (citations omitted).

Conversely, speech relating only to matters of private employee grievances is not protected.

*Connick*, 461 U.S. at 147, 154 (noting that, "[w]hen a public employee speaks . . . upon matters

only of personal interest, . . . a federal court is not the appropriate forum in which to review the

wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's

behavior").

Based on a liberal construction of Plaintiff's Amended Complaint, even assuming that she

has alleged facts plausibly suggesting that she is a public employee, the Court finds that she has

failed to allege facts plausibly suggesting that her speech addressed a mater of public concern.

In her Amended Complaint, Plaintiff alleges that "[t]he integrity, veracity and truthfulness of

officials of amateur sporting contests of public schools in New York State is a matter of public

concern[, and that] [i]n early 2006, Plaintiff questioned the integrity, veracity and truthfulness of

members of the Executive Board of the [D]efendant official organizations by filing complaints

with Defendants Ruddy and McCormick."  (Dkt. No. 4, at ¶¶ 91-92.)  However, Plaintiff also

alleges, more specifically, that "[i]n January 2006, [she] complained to the [D]efendants Ruddy

and Walbridge of improper, unprofessional and discriminatory conduct *toward her* by another

member of the Executive Board of the [D]efendant NNYSOC."  (Dkt. No. 4, at ¶ 61) (emphasis

added).

As an initial matter, these allegations do not plausibly suggest that Plaintiff was speaking

as a citizen.  Moreover, contrary to Plaintiff's vague allegation that her complaints involved a

matter of public concern, her complaints concerned the way in which she was treated by another

member of the Executive Board, which relates to matters of private employee grievances.  In

addition, the fact that her complaints dealt with her integrity, veracity and/or truthfulness as an

26

official (which, under certain circumstances, could be a matter of public concern) is not enough

to make Plaintiff's complaints one of public concern.  *Burns v. Cook*, 458 F. Supp.2d 29, 40

(N.D.N.Y. 2006) (Hurd, J.) ("The fact that her speech concerned statutory and contractual rights,

benefit entitlements, and medical privacy rights presumably enjoyed by other District employees

is not enough to make it a matter of public concern. Plaintiff was not speaking as an advocate for

District employee rights, or even as a concerned citizen; rather, she sought to redress personal

employment grievances.").

For each of these alternative reasons, Plaintiff's First Amendment retaliation claim is

dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ.

P. 12(b)(6).

### D.     Plaintiff's Claims for Injurious Falsehood and Abuse of Process

Because the Court has dismissed all of Plaintiff's federal law claims, the Court declines

to extend pendent jurisdiction over Plaintiff's New York State common law claims, and instead

dismisses these claims without prejudice to refiling in New York State Court within thirty (30)

days of this Decision and Order, pursuant to 28 U.S.C. § 1367(d).[25]  To this limited extent,

Defendants' motion to dismiss–which requests the dismissal of Plaintiff's injurious falsehood

and abuse of process claims–is partially denied.

---

[25]     *See Hurley v. County of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug. 31, 2005) (citing 28 U.S.C. § 1367[c][3]), *accord, Middleton v. Falk*, 06-CV-1461, 2009 WL 666397, at *9 (N.D.N.Y. Mar. 10, 2009) (Suddaby, J. adopting Homer, M.J.); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if . . . not present a federal court should hesitate to exercise jurisdiction over state claims.") (citations omitted).

27

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss for failure to state a claim and/or lack of subject matter jurisdiction (Dkt. No. 13) is <u>**GRANTED in part**</u> and <u>**DENIED in part**</u>, as described above in Part III of this Decision and Order; and it is further

**ORDERED** that Plaintiff's state claims of injurious falsehood and abuse of process, asserted in Plaintiff's Amended Complaint (Dkt. No. 4), are <u>**DISMISSED** without prejudice</u> to refiling in New York State Court within **THIRTY (30) DAYS** of this Decision and Order, pursuant to 28 U.S.C. § 1367(d); and it is further

**ORDERED** that the remainder of Plaintiff's Amended Complaint (Dkt. No. 4) is <u>**DISMISSED** with prejudice</u>.  The clerk is directed to enter judgment in favor of the defendants and close this case.

Dated:      September 30, 2010
           Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

28